## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN PAUL BEAUDOIN, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| CHARLES D. BAKER, in his Official | ) | |
| Capacity as Governor of the | ) | |
| Commonwealth of Massachusetts, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

FILED
IN CLERKS OFFICE
2020 JUN 19 PM 5: 14
U.S. DISTRICT COURT
DISTRICT OF MASS.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

John Paul Beaudoin, Sr. ("Plaintiff"), for his Complaint for Declaratory and Injunctive

Relief against Charles D. Baker ("Defendant") in his official capacity as Massachusetts

Governor, alleges as follows:

### PARTIES

1.     Plaintiff is a citizen of the United States of America and of the Commonwealth of

Massachusetts.  Plaintiff has filed, contemporaneously with this pleading, an affidavit in support

of his claims, attached hereto as EXHIBIT A, Defendant's COVID-19 Order No. 31, attached

hereto as EXHIBIT B, and two papers written by Plaintiff, attached hereto as EXHIBITS C & D.

Plaintiff resides at:          17 Fairview Road
                               Medfield, MA 02052
                               Norfolk County, MA

2.      Plaintiff has received formal education in engineering, physical sciences,

economics, psychology, sociology, organizational behavior, finance, and other disciplines

pertinent to studying effects of COVID-19 mitigation measures.

3.      Defendant, sued in his official capacity, is the Governor of the State of

Massachusetts.

Defendant's office location:   Massachusetts State House
                               24 Beacon Street
                               Office of the Governor
                               Room 280
                               Boston, MA 02133


### JURISDICTION AND VENUE

4.      This action arises under the United States Constitution, Amendments One, Nine,

and Fourteen, 42 U.S.C. § 1983, and the Massachusetts Administrative Procedures Act, M.G.L.

c. 30A, § 7.

5.      Federal question jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331 and

1343(a)(3).

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3) because

Defendant resides in this District, performs his official duties in this District, and a substantial

part of the events or omissions giving rise to this action occur or occurred in this District.

### FACTUAL ALLEGATIONS

7.      On May 1, 2020, Defendant issued COVID-19 Order No. 31, ORDER

REQUIRING FACE COVERINGS IN PUBLIC PLACES WHERE SOCIAL DISTANCING IS

NOT POSSIBLE (the "Regulation").

## The Regulation

8.      The Regulation, attached hereto as EXHIBIT B, became effective May 6, 2020.  It

states that the order will be in effect "until rescinded or until the emergency is terminated,

whichever happens first."

9.      Regarding its purported compliance with M.G.L. c. 639 of the Acts of 1950

("Civil Defense Act") and M.G.L. c. 17 § 2A (Powers of commissioner upon declaration of

emergency), the Regulation states that Defendant declared there now exists a state of emergency

in Massachusetts because:

> "the COVID-19 outbreak was characterized as a pandemic by the World Health
> Organization;"

> "the Federal Centers for Disease Control have determined that COVID-19 is
> spread mainly by person to person contact and that the best means of slowing the
> spread of the virus is through practicing social distancing and by minimizing
> personal contact with environments where the virus may be spread;"

> "the Department of Public health continues to urge all residents of the
> Commonwealth to limit activities outside of the home and to practice social
> distancing at all times to limit the spread of this highly contagious and potentially
> deadly virus;"

> "public health experts have determined that it is possible for an infected
> individual to transmit COVID-19 even when the individual does not exhibit
> symptoms of the virus;"

> "the Centers for Disease Control and Department of Public health have advised
> individuals to wear cloth face coverings when they are out of the home and may
> be in close proximity to others in order to prevent transmission of this highly
> contagious virus;"

> "the number of confirmed cases of COVID-19 continues to rise in the
> Commonwealth.  As of April 30, 2020, the Department of Public health had
> reported 62,205 cases of COVID-19, including 3,562 deaths, with all counties
> across the Commonwealth affected;"

10.     For its "Authority," the Regulation states that it was issued pursuant to sections 7,

8, and 8A of Chapter 639 of the Acts of 1950, specifically stating that it authorizes Defendant to:

"exercise any and all authority over persons and property necessary or expedient for meeting a state of emergency, including but not limited to authority over assemblages and pedestrian travel in order to protect the health and safety of persons; transportation or travel; regulation of the sale of articles of food and household articles; and the policing, protection, and preservation of public and private property;"

11.    The Regulation orders the following:

"... any person over age two who is in a place open to the public in the Commonwealth, where indoor or outdoor, and is unable to or does not maintain a distance of approximately six feet from every other person shall cover their mouth and nose with a mask or cloth face covering, except where a person is unable to wear a mask or face covering due to a medical condition or the person is otherwise exempted by Department of Public Health guidance. A person who declines to wear a mask or cloth face covering because of a medical condition shall not be required to produce documentation verifying the condition. This requirement applies to all workers and customers of businesses and other organizations open to the public that are permitted to operate as COVID-19 Essential Businesses as defined in Appendix A of COVID-19 Order 13, as extended by COVID-19 Orders 21 and 30."

"All persons are required to wear masks or cloth face coverings at all times when inside grocery stores, pharmacies, and other retail stores. All persons are also required to wear masks or cloth face coverings when providing or using the services of any taxi, car, livery, ride-sharing, or similar service or any means of mass public transit, or while within an enclosed or semi-enclosed transit stop or waiting area."

"All persons are strongly discouraged from using medical-grade masks to meet the requirements of this Order, as medical-grade masks should be reserved for healthcare workers and first responders."

"The Commissioner of Public health is directed to issue guidance, subject to my approval, to implement the terms of this Order, which shall include guidance for the use of face coverings by children between the ages of two and five years old."

"If a customer refuses to wear a mask or cloth face covering for non-medical reasons, a business may decline entry to the individual."

### The Regulation's Effects on John Paul Beaudoin, Sr. and the Public Interest

12.    The Plaintiff is reminded that he did not have the society and companionship of

his grandmother, Alma Dubois, because she died in the Spanish influenza in 1918 when the

Plaintiff's father was 6 months old. In 1968, the Hong Kong flu pandemic (H3N2) is estimated

to have killed 100,000 people in the United States, most in excess of 65-years-old. The Plaintiff,

at the age of 4 years old, was given a prophylactic antibiotic combination of derivatives of

penicillin and streptomycin by hypodermic means by his pediatrician, though the Plaintiff did not

have the Hong Kong flu. It was done as a preventive measure. As a result, hundreds or

thousands of young children were then afflicted with total deafness in one or both ears. The

Plaintiff was lucky to be left with hearing in only one ear at 70% for the past 51 years of his life

since he was 4-years-old. This is how the medical community learned that you cannot mix those

two antibiotics for use in young children. They had not tested them in combination prior to

administering the shots en masse. They rushed to judgment out of panic, fear, and profit.

Another personal effect of this Regulation on the Plaintiff is that he is being forced to do

something against his will that he feels will be less safe for himself and others because he knows

that there is no study demonstrating net positive efficacy of face coverings and while knowing

that the medical consensus opinion in 1968 regarding the injection he received carried the same

"can only help" common musing. The regulation also deprives the Plaintiff of about 80% of

verbal communication as he needs to see the mouth of a speaker in order to match the lip

movement with the muffled sound, a form of lip reading. Wearing a mask prevents the basic

right of receiving speech communication. Prior traumatic stress in the Plaintiff's life has

returned as a result of the Regulation, not as a result of COVID-19 itself.

13.     The Regulation is inflicting permanent harm on the Plaintiff, other citizens of the

United States and the Commonwealth of Massachusetts, and on the public interest as face

coverings are a constant reminder to be afraid of what cannot be seen, nor can be stopped. Fear

and hysteria, which now permeate our society, not due to COVID-19, but rather due to the hyperbolic fiction expressed by news outlets and by government authorities including the invocation of the Civil Defense Act and orders in this Regulation create a furtherance of traumatic stress occurring in families and individuals. The Plaintiff knows and understands firsthand the stressors that cause child abuse, spousal abuse, divorce, suicide, homicide, drug overdoses, single-parent households causing pathologies in children, and others societal maladies. The Regulation itself and all the now ubiquitous false information that surrounds COVID-19 are doing far more harm to society than they are doing benefit. The Regulation allows businesses to discriminate against and deny access to those not wearing face coverings. The losses of both liberty and the pursuit of happiness as effects of the Regulation should not be ignored as they will have lasting consequences in the lives of millions of people in Massachusetts for decades.

14. The Regulation inflicts further permanent harm on the public interest in that the use of the Civil Defense Act, so cavalierly, moves the threshold of its invocation lower yet again, while citizens' trust in government erodes in proportion.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF

## COUNT I

## THE REGULATION IS INVALID BECAUSE IT VIOLATES THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

15. Under the First Amendment to the United States Constitution, "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech . . . ; or the right of the people to peaceably assemble ..." The First Amendment applies to states through the Fourteenth Amendment.

16.     The First Amendment prohibits the states from restricting speech, including

physically, through the requirement of a face covering, which significantly diminishes a person's

speech in whole or in part; and the First Amendment prohibits the states from prohibiting the free

exercise of religion such as has happened by the Regulation's reference to other regulations

COVID-19 Orders 13, 19, and 21 to close churches or unreasonably restrict capacity or hours;

and the First Amendment prohibits restricting the right to peaceably assemble according to the

free choice of those in assembly.  Such restrictions are presumptively unconstitutional, and may

be justified only if the government proves that the restrictions are narrowly tailored to serve only

a compelling state interest, which has been neither proven nor given as a reason in any specific

way or through any scientific-based evidence in or by reference from the Regulation.

## COUNT II

**THE REGULATION IS INVALID BECAUSE IT VIOLATES THE NINTH
AMENDMENT OF THE UNITED STATES CONSTITUTION**

17.     Paragraphs 1-16 of Count I are incorporated here by reference as paragraphs 1-16

of Count II.

18.     Under the Ninth Amendment to the United States Constitution, "The enumeration

in the Constitution, of certain rights, shall not be construed to deny or disparage others retained

by the people." The Ninth Amendment applies to states through the Fourteenth Amendment.

19.     The Ninth Amendment recognizes that not all rights are enumerated in the

Constitution and that some rights, though they may be implicitly established or protected in

another Amendment or Amendments, are human rights endowed by God or civil society.  The

suspension of such rights through the invocation of the Civil Defense Act and orders in the

Regulation can be justified only if the government proves that the restrictions are narrowly

tailored to serve only a compelling state interest, which has not been proven in any specific way or through any scientific-based evidence in or by reference from the Regulation.

20.    Citizens are harmed by the Regulation in violation of the Ninth Amendment in that the rights to buy eggs, to hike with 11 people versus 10, to have an uncovered face while walking down a busy city sidewalk on a sunny day, and other human rights not explicitly enumerated in the Constitution are infringed upon by the Regulation explicitly or implicitly as a result of causal event cascade from the Regulation.

## COUNT III

**THE REGULATION IS INVALID BECAUSE IT VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

21.    Paragraphs 1-20 of Count II are incorporated here by reference as paragraphs 1-20 of Count III.

22.    The due-process clause of the Fourteenth Amendment provides that ". . . No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

23.    Defendant issued the Regulation as an emergency regulation on May 1, 2020.  It became effective on May 6, 2020.

24.    The Fourteenth Amendment prohibits the states from depriving a citizen of life, liberty, or property without due process of law.  Yet the Regulation does exactly that as it deprives citizens, by fine and implied public label of "malcontent," of the liberty to move freely about in public areas without a face covering or the freedom of choice to wear or not wear a face covering or the freedom of choice to congregate in groups of 11 or 12 responsibly or the freedom to buy food without a face covering.  This Regulation can be justified only if the government

proves that the restrictions are narrowly tailored to serve only a compelling state interest, which

has not been proven in any specific way or through any scientific-based evidence in or by

reference from the Regulation.  In summary, the Regulation violates both procedural due process

in the absence of reason for deprivation of rights and substantive due process in the deprivation

of rights themselves.

**COUNT IV**

**THE REGULATION IS INVALID BECAUSE IT VIOLATES THE EQUAL
PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION AND ART. 10 OF
THE CONSTITUTION OF THE COMMONWEALTH OF MASSACHUSETTS**

25.     Paragraphs 1-24 of Count III are incorporated here by reference as paragraphs

1-24 of Count IV.

26.     The equal protection clause of the Fourteenth Amendment provides that ". . . No

state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

27.     Article 10 of the Massachusetts Constitution provides that "[e]ach individual of

the society has a right to be protected by it in the enjoyment of his life, liberty and property,

according to standing laws." Although the phrase "equal protection of the laws" does not appear

in Article 10 of the Constitution of the Commonwealth, it raises the same constitutional

principle.

28.     By allowing a person to not wear a face covering due to a medical condition and

not requiring said person to produce documentation verifying the condition, the Regulation

suborns prevarication from those who wish to avoid compliance with the Regulation.  If the use

of a face covering is effectively an option, then it undermines the edict of the Regulation itself

and is unenforceable insofar as a person need only say, "I have a medical condition." This is

selectively punitive to the righteous, who are compelled by inherent virtue, to tell the truth.  And

it creates a prejudice from commercial business staff against those customers who claim to have

a medical condition.  Much of the prose, which forms the orders in the Regulation, regarding

face coverings, is taken from the CDC.gov website.  However, the seven recent studies listed at

the bottom of the CDC web page entitled, "Recommendation Regarding the use of Cloth Face

Coverings, Especially in the Areas of Significant Community-Based Transmission" have nothing

to do with the efficacy of masks or any study of masks.  (https://www.cdc.gov/coronavirus/2019-

ncov/prevent-getting-sick/cloth-face-cover.html#)  As recently as 2015, the *Journal of the Royal*

*Society of Medicine* notes, "... overall there is a lack of substantial evidence to support claims

that face masks protect either patient or surgeon from infectious contamination.  More rigorous

contemporary research is needed to make a definitive comment on the effectiveness of surgical

face masks." (Zhou, C., Sivathondan, P., Handa, A. (2015-Jun). *Unmasking the surgeons: the*

*evidence base behind the use of facemasks in surgery*. Journal of the Royal Society of Medicine.

v.108(6). Retrieved 2020-05-18 from https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4480558/)

A paper written by the Plaintiff appears in EXHIBIT D and describes the lack of any good study

of efficacy of masks.  Many nurses and doctors say that masks promote more spread than they

prevent due to collection of virus assay on the mask only to be ejected as a highly concentrated

virus plume upon a turn of the head, gust of wind, sneeze, cough, or jostling through touch or

through hand to surface contact after toughing the mask.  There is no study cited on CDC.gov

that states that masks do anything to prevent the spread of coronaviruses, influenzas, or

rhinoviruses.  In the absence of any science or data regarding the efficacy of face coverings and

respecting the belief of a citizen that face coverings are more dangerous for self and others leaves

a citizen with three options based on the Regulation, 1) believe to harm oneself by wearing a face

covering, 2) prevaricate and state "medical condition," or, 3) be punished by fine under the Regulation. It is unconstitutional to force a citizen to choose among the three. Regarding social distancing and closed businesses, there is no proof, nor is there any evidence cited, of net positive efficacy of the stringent measures ordered in the Regulation. There is, however, significant evidence that said measures do not save lives. The paper in EXHIBIT C authored by the Plaintiff explains Sweden's mitigation measures compared to Massachusetts' mitigation measures and then compares the spread of COVID-19 among populations. Sweden and Massachusetts began their outbreaks within days of each other, grew, and leveled off at similar times. The curves of the plots of daily COVID-19 deaths are quite similar, though thousands more died in Massachusetts than did in Sweden. This is very good evidence "against" the purported efficacy of mitigation measures spelled out in the Regulation, yet there is no apparent evidence "for" the purported efficacy of mitigation measures spelled out in the Regulation.

29.     The Regulation, by its specific requirements of actions, is punitive to those who believe the actions harm self and society more than the actions benefit self and society and is not punitive to those who believe the actions benefit self and society more than the actions harm self and society.  In the absence of any proof of net positive efficacy of those actions, Defendant is arbitrarily and capriciously discriminating against those who have one well-founded belief over those who have an unproven, common belief. Thus, the Regulation deprives persons of the equal protection of the laws.

30.     The Regulation violates the Fourteenth Amendment's equal protection clause and Article 10 of the Massachusetts Constitution by facially providing for the selective application of actions and, therefore, enforcement of the actions required in the Regulation, which is based

upon an arbitrary choice by the Defendant and in the absence of any evidence of net positive

efficacy.

31.     Independently, the Regulation violates the Fourteenth Amendment's equal

protection clause and Article 10 of the Massachusetts Constitution by making an absolute and

arbitrary selection of a class, independently of good intent for making a distinction.

## COUNT V

## THE REGULATION IS INVALID BECAUSE IT EXCEEDS THE MASSACHUSETTS GOVERNOR'S AUTHORITY

32.     Paragraphs 1-31 of Count IV are incorporated here by reference as paragraphs

1-31 of Count V.

33.     As a member of the executive branch of government, the Defendant lacks the

inherent authority to issue regulations beyond what has been delegated.  Defendant issued the

Regulation under the Civil Defense Act, which creates the Massachusetts Emergency

Management Agency (MEMA), which gives the governor and MEMA director the powers of

"construction of fallout shelters designed to protect the members of a family unit from the effects

of enemy attack," and to designate "nuclear power plant areas," and create a "civil defense

advisory council;" and which gives the governor the power to proclaim a "State of Emergency,"

ergo giving the governor the awesome "Power to Seize or Possess Personal and Real Property"

during such a proclamation of emergency resulting from "enemy attacks, sabotage or other

hostile action," and the power to proclaim Executive Orders, General Regulations, and Written

Instructions of the Governor, which, if violated, "shall be punished by imprisonment of not more

than one year, or by a fine of not more than five hundred dollars, or both;" and M.G.L. c. 17 §

2A, which states that "Upon declaration by the governor that an emergency exists which is

detrimental to the public health, the commissioner may, ... take such action ... as he may deem

necessary to assure the maintenance of public health and the prevention of disease. The

commissioner ... may establish procedures to be followed during such emergency to insure (sic)

the continuation of essential public health services and the enforcement of the same. Upon

declaration by the governor that such emergency has terminated, all powers granted to and

exercised by the commissioner under this section shall terminate."

34.     The Regulation far exceeds the power of the executive branch in that there is not

now an emergency commensurate with the intent of the Civil Defense Act. The Plaintiff

contends that the legislators who voted the Civil Defense Act into law would never have agreed

that the COVID-19 pandemic rises to the emergency threshold required to invoke the Civil

Defense Act, which the Defendant has used to usurp such awesome power as to take basic rights

away from citizens. The Civil Defense Act is meant for far greater emergencies; and the

invocation of the Civil Defense Act so indecorously, in this instance, weakens the response to far

greater future emergencies, and needlessly creates hysteria, fear, stress, discord, panic, divorces,

parental alienation, homicides, suicides, and overdoses in society. The Regulation is not proven,

as a result of data modeling and simulation, to have any net positive effect. No such net positive

effect or effects have been cited by the CDC or Massachusetts Department of Public Health in or

by reference from the Regulation. By blindly following other states and listening to news media

spreading fear and panic, the Defendant has not acted as a leader making decisions based on

thinking, but rather has acted as a follower making unconstitutional decisions based on emotion.

The authority to make law, in this case, lies rightfully in the legislature, which has had ample

time to craft law rather than cede such authority to the governor.

35.    Asserting once again the argument that there does not exist sufficient emergency, the Defendant also does not have authority to invoke M.G.L. c. 17 § 2A.  And, even if authority were deemed justified by the court, the Regulation given under the authority of M.G.L. c. 17 § 2A must still meet standards of net benefit for society or individuals, though the Defendant has not cited any proof thereof.  Id est, face coverings do little to stop the intake or expression of virus and may cause plumes of virus assay concentrations orders of magnitude greater than from normal breathing without a face covering.  The best experiment the Plaintiff encountered, as an engineer knowledgeable in the scientific method and recently familiar with medical journal literature on the efficacy of masks, was when the Plaintiff's 17-year-old son told him to watch a 10-second video of a person wearing a mask and vaping.  The person inhaled, put on the mask, and then exhaled.  The vapor cloud was seen coming out of the top, bottom, and sides of the mask, as it filled the car's interior, thus displaying the mask as nearly useless in protecting others from a COVID-19 infected mask wearer.  Video can be found at https://youtu.be/okIEE3wifJE.

36.    Without any CDC or medical journal studies on the efficacy of masks or group size limitation, and lacking an emergency rising to an acceptable threshold, Defendant accordingly exceeded his authority by issuing the Regulation.

37.    The foundational reasoning in prose, listed in item "11." above taken from the Regulation, for declaring a state of emergency and invoking powers drawn from the Civil Defense Act and M.G.L. c. 17 § 2A is overly broad and, in its entirety, lacks specificity.  As recently as 2009, the World Health Organization ("WHO") labeled the influenza A(H1N1) a "pandemic," yet no state of emergency orders such as the Regulation were declared.  The WHO is not a United States entity and has no authority over the people of the United States.  In addition, the leadership of the WHO is compromised by monetary influence from China and

perhaps other countries. Influenzas and common colds are also "spread mainly by person to

person contact," as stated in the Regulation, and do not require a state of emergency. It is

possible for an infected individual to transmit rhinovirus (common cold) "even when the

individual does not exhibit symptoms of the virus," as stated in the Regulation. Few would

expect there to be a state of emergency declared for the common cold. As of May 22, 2020,

according to mass.gov data, 61% of the deaths in MA occurred separate from the public and

isolated to longterm care facilities ("LTC"). As of May 22, 2020, only 309 of the 6,228 deaths

attributed to COVID-19 in Massachusetts occurred in people under 60 years of age. CDC.gov

data files show that in a similar time period last year, weeks ending between February 2, 2019

and May 18, 2019, influenza and pneumonia deaths in MA totaled 496. The foundation upon

which the Regulation is predicated is flawed on its face. A foreign organization declaring the

word, "pandemic," is not a valid reason to invoke wartime powers in the Civil Defense Act.

38.     The Civil Defense Act was made law in response to potential nuclear war, which

was thought to be a very real possibility in 1950. While the need for civil defense is not

questioned, Plaintiff argues that the level of emergency from COVID-19 falls far short of any

such emergency that would allow the suspension of citizens' rights articulated in the Constitution

or endowed by God; and if COVID-19 is allowed as a reason for invoking the Civil Defense Act,

then the threshold to infringe on the basic rights of citizens will have been lowered to the whim

of the governor and a single word, "pandemic," from a foreign entity, and without citation of any

specificity with regard to an emergency. The authority for this emergency declaration does not

hold up to the scrutiny of the data and science relative to COVID-19 in the year 2020. Citation

of case law history, which will surely come from the Defendant, relative to the Civil Defense

Act, serves as proof of scope creep in the use of emergency declarations. The dangers of scope

creep with regard to the application of civil defense law can include, for example, forced

vaccinations for the public good, where "vaccinations" is an overly broad term. Specificity

should be required in that HPV vaccinations and polio vaccinations are not equal in delivering

public safety. This is but one example of how the lowering of the bar to invoke the Civil

Defense Act can infringe upon the rights of citizens through the use of overly broad terms such

as those in the Regulation, which may result in forced COVID-19 vaccinations of citizens and

their children.

39.     Given the awesome power of the Civil Defense Act, the burden of proof of

efficacy should not be on the Plaintiff to prove that the Regulation provides net benefit. The

burden of proof of net benefit to claim such awesome authority and power as to invoke the Civil

Defense Act should be on the Defendant; and yet all the Defendant has put forth as reasoning

different from a common cold is the word "pandemic" given by a non-U.S.-based world entity in

the throes of a scandal of corruption having given misleading, false, or suborned statements

regarding COVID-19.

## COUNT VI

**THE REGULATION IS INVALID BECAUSE IT CAUSES A DEPRIVATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983**

40.     Paragraphs 1-39 of Count V are incorporated here by reference as paragraphs

1-39 of Count VI.

41.     Defendant's Regulation ordering wearing of face coverings, assembling in groups

of no more than 10, and limiting the distance between people effectively limits civil rights

detailed in the first, ninth, and fourteenth Amendments to the United States Constitution.

42.    States do not have the power and authority to limit the freedoms of citizens to degrees chosen arbitrarily and without cited specifications of reason, experts, or studies.

43.    The Regulation and other COVID-19 Orders, policies, and enforcement related to them cause injury to the Plaintiff and all citizens of the Commonwealth of Massachusetts and are actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests for relief:

A.    On Count I, a declaratory judgment that the COVID-19 Order No. 31 is invalid because it violates the First Amendment to the United States Constitution;

B.    On Count II, a declaratory judgment that the COVID-19 Order No. 31 is invalid because it violates the Ninth Amendment to the United States Constitution;

C.    On Count III, a declaratory judgment that the COVID-19 Order No. 31 is invalid because it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

E.    On Count IV, a declaratory judgment that the COVID-19 Order No. 31 is invalid because it violates the Equal Protection Clause of the United States Constitution and Art. 10 of the Constitution of the Commonwealth of Massachusetts;

F.    On Count V, a declaratory judgment that the COVID-19 Order No. 31 is invalid because it exceeds the Governor's authority;

G.    On Count VI, a declaratory judgment that the COVID-19 Order No. 31 is invalid because it deprives citizens of civil rights in volition of 42 U.S.C. § 1983;

H.      On all Counts, a permanent injunction enjoining Defendant from enforcing

COVID-19 Order No. 31 against all persons within the Commonwealth of Massachusetts;

I.      On all Counts, an injunction enjoining Defendant from enforcing any and all

COVID-19 orders, until such time as Defendant can provide valid, specific, and detailed reasons

for each action ordered within any and all COVID-19 orders;

I.      On all Counts, a declaratory judgment and order that Defendant must cite specific

and credible evidence in support of each emergency declaration, including all COVID-19 Orders,

as the people deserve to receive such evidence used to infringe upon their rights;

J.      On all Counts, a declaratory judgment and order that Defendant must make a

public declaration that the Regulation and other unconstitutional COVID-19 regulations are no

longer in effect until such time as specific, credible evidence and proof of net positive efficacy

are given under oath;

K.      An Order granting Plaintiff his attorney's fees incurred in bringing this action, to

the extent authorized by 42 U.S.C. § 1983, or other law;

L.      An Order granting Plaintiff the costs incurred in bringing this lawsuit; and

M.      Such other and further relief as this Court deems just and proper.

Dated: June 18, 2020

Respectfully submitted,

_____

JOHN PAUL BEAUDOIN, SR. (Pro se)
17 Fairview Road
Medfield, MA 02052
Mobile 508-277-7276
e-mail johnbeaudoinsr@gmail.com